1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT T. BUTLER,

11              Plaintiff,                    No. 2:11-cv-2802 EFB

12         vs.

13   CAROLYN W. COLVIN,[1] Acting
     Commissioner of Social Security,

14
                Defendant.                    ORDER
15   _____/

16         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying his applications for a period of disability and Disability Insurance

18   Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the

19   Social Security Act.  The parties' cross-motions for summary judgment are pending.  For the

20   reasons discussed below, the court grants the Commissioner's motion and denies plaintiff's

21   motion.

22   ////

23   ////

24   _____

25         [1]  Michael J. Astrue was previously named as defendant.  Carolyn W. Colvin is presently
     the acting Commissioner of Social Security.  Accordingly, the court now substitutes in Carolyn
26   W. Colvin as defendant.

                                            1

I.      BACKGROUND

Plaintiff applied for a period of disability, DIB and SSI on May 31, 2007, alleging that he had been disabled since June 1, 2005.  Administrative Record ("AR") 58, 65.  Plaintiff's applications were initially denied on September 6, 2007, and upon reconsideration on April 29, 2008.  *Id*. at 50-54, 43-47.  On December 22, 2008, a hearing was held before administrative law judge ("ALJ") Daniel G. Heeley.  *Id.* at 342-82.  Plaintiff was represented by counsel at the hearing, at which he, a third party, and a vocational expert ("VE") testified.  *Id.*

On July 10, 2009, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(I), 223(d), and 1614(a)(3)(4) of the Act.[2]  AR at 16-26.  The ALJ made the

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id*.

following specific findings:

1.  The claimant met the insured status requirements of the Social Security Act through June 30, 2009.

2.  The claimant has not engaged in substantial gainful activity since June 1, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

...

3. The claimant has the following severe impairments: human immunodeficiency virus, hepatitis C, gout, obesity, obstructive sleep apnea, depression and anxiety (20 CFR 404.1520(c) and 416.920(c)).

...

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

...

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except he can climb, stoop, kneel, crouch or crawl only occasionally.  He retains the ability to understand, remember and carry out only simple job instructions.  The claimant is limited in the ability to interact appropriately with others and should have only occasional contact with the general public.

...

6.  The claimant is unable to perform any past relevant work (20 CFR 416.1565 and 416.965).

...

7.  The claimant was born [in] 1971 and was thirty-three years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

////

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

...

11.  The claimant has not been under a disability, as defined in the Social Security Act, since June 1, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 18-25.

On September 8, 2009, plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 10. However, on August 30, 2011, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id*. at 4-6.

II.    LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

4

1   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

2   III.   <u>ANALYSIS</u>

3       Plaintiff argues that the ALJ erred in (1) evaluating the medical evidence; (2) improperly

4   discounting plaintiff's credibility; and (3) failing to sustain his burden of establishing that there

5   is other work in the national economy that plaintiff can perform.  Pl.'s Mot. for Summ. J., Dckt.

6   No. 16-1 at 4.

7       A.   <u>The ALJ Did Not Err in Evaluating the Medical Evidence</u>

8       Plaintiff argues that the ALJ erred by failing to properly credit the opinion of his treating

9   physician and examining psychiatrist.  *Id.* at 13.  The weight given to medical opinions depends

10   in part on whether they are proffered by treating, examining, or non-examining professionals.

11   *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Ordinarily, more weight is given to the

12   opinion of a treating professional, who has a greater opportunity to know and observe the patient

13   as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  To evaluate

14   whether an ALJ properly rejected a medical opinion, in addition to considering its source, the

15   court considers whether (1) contradictory opinions are in the record; and (2) clinical findings

16   support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining

17   medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In

18   contrast, a contradicted opinion of a treating or examining professional may be rejected for

19   "specific and legitimate" reasons that are supported by substantial evidence.  *Id.* at 830.  While a

20   treating professional's opinion generally is accorded superior weight, if it is contradicted by a

21   supported examining professional's opinion (e.g., supported by different independent clinical

22   findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.

23   1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[w]hen an

24   examining physician relies on the same clinical findings as a treating physician, but differs only

25   in his or her conclusions, the conclusions of the examining physician are not 'substantial

26   evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

(1)    The ALJ Provided Legitimate and Specific Reasons for Rejecting the Opinion of Plaintiff's Treating Physician.

Plaintiff argues that the ALJ erred by failing to properly credit the opinion of his treating physician, Dr. Khambati. Dckt. No. 16-1 at 15. Dr. Khambati, plaintiff's primary care physician, first saw plaintiff on June 19, 2007, and completed a Physician Statement on that same day. AR 72. Dr. Khambati diagnosed plaintiff with hepatitis C; gout; arthritis in the low back, knees, ankles, and feet; HIV; and Attention Deficit Disorder.[3]  *Id.* at 73. Dr. Khambati was of the opinion that plaintiff could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand/walk for less than two hours in an eight-hour day, and sit for less than six hours in an eight-hour day. *Id.* at 72. Dr. Khambati also opined that plaintiff must periodically alternate sitting and standing due to pain in the left ankle and foot associated with his gout and arthritis. *Id.*

Also included in the record is the opinion of Dr. Seu, an examining physician hired by the State Agency. *Id.* at 199. Dr. Seu diagnosed plaintiff with HIV, gout, hepatitis C, adjustment disorder with depressed mood (untreated), and chronic methamphetamine abuse. *Id.* at 202, 206. In reaching his opinions, Dr. Seu relied upon Dr. Khambati's June 2007 assessment and examination. *Id.* at 199. It was Dr. Seu's opinion that plaintiff could stand/walk for six hours, sit without limitation, lift 50 pounds occasionally and 25 pounds frequently, with no other postural, manipulative, visual, communicative, or environmental limitations. *Id.* at 202. Dr. Seu opined that plaintiff was mildly restricted in activities of daily living and would have moderate difficulty in maintaining social functioning and concentration, persistence and pace. *Id.* at 213. The record also contains the opinion of Dr. Amon, a state-agency non-examining physician. *Id.* at 223. Dr. Amon based his opinion on "treating or examining source statements . . . in the file." *Id.* at 227. He opined that plaintiff could stand/walk for six hours; sit for a total of about six

---

[3] Dr. Khambati referred plaintiff to a mental health professional for further evaluation of his Attention Deficit Disorder. *Id.*

1    hours; lift 20 pounds occasionally and 10 pounds frequently; climb ramps, stairs, ladders, ropes,

2    and scaffolds occasionally; and stoop, kneel, crouch, and crawl occasionally.  *Id.* at 223-229.

3    In assessing the record, the ALJ gave "substantial weight" to Drs. Seu and Amon's opinions,

4    while giving less weight to Dr. Khambati's opinion.  AR 24.  Since Dr. Khambati's opinion

5    regarding plaintiff's functional limitations was contradicted by the opinions of Drs. Seu and

6    Amon, the ALJ was required to give specific and legitimate reasons for discounting Dr.

7    Khambati's assessment.[4]  *See Andrews*, 53 F.3d at 1041.  The ALJ rejected Dr. Khambati's

8    assessment because "[t]he course of treatment pursued by the claimant's primary care physician

9    has not been consistent with what one would expect if the claimant were truly disabled, as the

10   doctor has reported."  AR at 24.  The ALJ further found:

11           Although the claimant has received treatment for the allegedly disabling
             impairments, that treatment has been routine and conservative in nature.  The
12           claimant has not needed any anti-viral treatment for his HIV or hepatitis C as his
             viral load is low and his white blood cell count is adequate.  He has not been
13           hospitalized due to either condition and takes no anti-viral medication.  His sleep
             apnea is mild and his gout, although chronic, is well-controlled with medication
14           when exacerbated.

15   *Id*. at 23.

16           An ALJ may reject the opinion of a treating physician who prescribed conservative

17   treatment, yet opines that a claimant suffers disabling conditions.  *Rollins v. Massanari*, 261 F.3d

18   853, 856 (9th Cir. 2001).  The record before the court supports the ALJ's findings that plaintiff

19   only received conservative treatment.  There is no evidence that Dr. Khambati recommended a

20   _____

21           [4]  As discussed herein, the ALJ provided legally sufficient reasons for rejecting Dr.
     Khambati's *treating* opinion.  The court observes, however, that Dr. Khambati's status as a
22   treating physician is dubious.  As the Commissioner points out, the opinion at issue was rendered
     by Dr. Khambati on the same day he first saw plaintiff.  A treating physician's opinion is
23   generally afforded greater weight "[b]ecause treating physicians are employed to cure and thus
     have a greater opportunity to know and observe the patient as an individual . . . ."  *Smolen*, 80
24   F.3d at 1285.  Here, at the time of the opinion, Dr. Khamabati did not have a greater opportunity
     than an examining physician to know and observe plaintiff.  Accordingly, the ALJ was not
25   required to give Dr. Khamabati's opinion the weight generally afforded to a treating physician's
     opinion.  Nevertheless, because the ALJ found Dr. Khambati to be plaintiff's treating physician,
26   the court addresses the ALJ's reasons for rejecting the opinion.

course of treatment to plaintiff related to gout, hepatitis C, or HIV.  Indeed, Dr. Khambati's only

apparent course of treatment was to refer plaintiff to a mental health professional for Attention

Deficit Disorder, which is unrelated to plaintiff's alleged physical impairments.  *Id*. at 73.  Here,

the routine and conservative treatment of plaintiff's medical conditions supports the ALJ's

rejection of the debilitating limitations assessed by Dr. Khambati.  Accordingly, the ALJ

provided a legally sufficient basis for giving less weight to the opinion of Dr. Khambati.

Moreover, Dr. Seu's opinion constitutes substantial evidence that further supports the

ALJ's rejection of Dr. Khambati's assessment.  *See Magallanes v. Bowen*, 881 F.2d 747, 751

(9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of

the claimant's treating physician is contradicted, and the opinion of a nontreating source is based

on independent clinical findings that differ from those of the treating physician, the opinion of

the nontreating source may itself be substantial evidence; it is then solely the province of the

ALJ to resolve the conflict").  Dr. Seu's report provided detailed analysis supporting his medical

opinion.  His assessment was based upon a formal physical examination and a review of Dr.

Khambati's assessment.  AR 199.  Dr. Seu examined plaintiff's coordination, station, and gait

and determined that plaintiff's station was normal, even though plaintiff had a slight limp on the

right side.  *Id*. at 200.  Plaintiff was able to get on and off the table without difficultly and could

take off his own shoes.  *Id*.  Dr. Seu also tested plaintiff's range of motion for his spine, lumbar

region, hip joints, knee joints, should joints, wrist joints, and finger/thumb joints.  *Id*.

Examination revealed that plaintiff had tenderness in both ankles and a deformed right first

metatarsal head.  *Id*.  Dr. Seu also performed motor strength and muscle tone testing, a sensory

examination, and deep tendon reflex examination–all of which were within "normal limits."  *Id*.

All of these findings differ from the scant clinical findings relied upon by Dr. Khambati in

assessing plaintiff's functional limitations.  Accordingly, Dr. Seu's report is substantial evidence

supporting the ALJ's rejection of Dr. Khambati's opinion.

////

1         (2)    <u>The ALJ Properly Rejected the Opinion of Plaintiff's Examining</u>

2                 <u>Psychiatrist</u>

3        Plaintiff also argues that the ALJ failed to provide legally sufficient reasons for rejecting

4  his examining psychiatrist's opinion.  The ALJ considered the opinions of two examining

5  physicians—Dr. Kalman, who was hired by plaintiff, and Dr. Daigle, who was hired by the state

6  agency.  Dr. Kalman opined that plaintiff was moderately limited in his ability to understand,

7  remember, and carry out detailed (3 or more steps) instructions or tasks which may or may not

8  be repetitive; work in coordination with, or proximity to, others without being unduly distracted

9  by them; complete a normal workday and workweek without interruptions from psychologically

10  based symptoms and to perform at a consistent pace without an unreasonable number and length

11  of rest periods.  AR 285-287.

12        Dr. Daigle's opinion was less restrictive.  He opined that plaintiff was slightly limited in

13  his ability to follow detailed and complex instructions and to associate with day-to-day work

14  activity, including attendance and safety; slightly to moderately limited in ability to relate and

15  interact with supervisors, coworkers and the public; slightly to moderately limited in ability to

16  maintain concentration and attention, and persistence and pace; and moderately limited in ability

17  to adapt to the stresses common to a normal work environment.[5]  AR 221-222.

18        The ALJ gave substantial weight to Dr. Daigle's opinion, while giving less weight to Dr.

19  Kalman's opinion.  Plaintiff contends that the ALJ committed error by rejecting Dr. Kalman's

20  opinion without providing legally sufficient reasons.  The instant case does not present the more

21  frequent situation where an ALJ discredits a treating physician's opinion and adopts the opinion

22  of an examining or non-examining source.  Under that situation, the law is firmly established

23  that the ALJ may not reject the treating physician's opinion without providing legally sufficient

24  reasons.  *Andrews*, 53 F.3d at 1041.  In the instant case, the ALJ adopted an examining source's

25

26       [5] Also included in the record is the opinion of Dr. Lipetz, a non-examining psychologist hired by the State Agency.  *Id.* at 196-198.  His opinion was similar to that of Dr. Daigle.

opinion over another examining source's opinion.  Where, as here, the ALJ is presented with conflicting medical opinions of equal weight, the ALJ may resolve the conflict and need not provide specific and legitimate reasons.  *See Sheffer v. Barnhart*, 45 Fed. Appx. 644, 645 (9th Cir. 2002) ("Because the ALJ was entitled to resolve this evidentiary conflict between conflicting opinions of equal weight, he did not need to provide specific and legitimate reasons for rejecting [two treating physicians' opinions]."); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."); *Andrews*, 53 F.3d at 1041 (requiring specific and legitimate reasons only where the conflicting opinion is not based on independent clinical findings); *Watson v. Barnhart*, 2003 WL 21838474, *4 (N.D. Cal. August 1, 2003) (finding that ALJ decision was consistent with the opinion of one of the plaintiff's treating physicians and, therefore, the ALJ "did not need to articulate specific and legitimate reasons for disregarding [another treating physician's] opinion.").  Here, the ALJ's decision was consistent with Dr. Daigle's opinion and therefore the ALJ did not need to articulate his reasons for disregarding Dr. Kalman's opinion.  Accordingly, the ALJ did not err in giving greater weight to the opinion of Dr. Daigle.

      B.      The ALJ's Credibility Findings are Supported by Substantial Evidence

        Plaintiff contends that the ALJ erred in failing to apply the proper legal standards in evaluating plaintiff's credibility.  Dckt. No. 16-1 at 20.  In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  *See id.* at 345–47.  The ALJ also may consider:  (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment,

and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Work records, physician and third party testimony about nature, severity and effect of symptoms,

and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec.*

*Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly

debilitating medical problem may be a valid consideration by the ALJ in determining whether

the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary*

*of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own

observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990).

"Without affirmative evidence showing that the claimant is malingering, the Commissioner's

reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v.*

*Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ first cited plaintiff's conservative treatment as a reason for discounting

plaintiff's credibility. The Ninth Circuit has held that evidence of "conservative treatment" is

sufficient to discount a claimant's testimony regarding severity of an impairment. *See Parra v.*

*Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007). As mentioned above, the record does not show

that plaintiff has needed any anti-viral treatment for his HIV or hepatitis C, *id.* at 218; he has not

been hospitalized, *id.* at 218; he takes no anti-viral medication, *id.* at 199; and his gout is well-

controlled with medication. *Id.* Moreover, in his motion for summary judgement plaintiff

concedes that his treatment was conservative ("there is no indication that anything other than

conservative treatment is appropriate for [my] many impairments"). Dckt. No. 16-1 at 15.

Next, the ALJ noted plaintiff's failure to take prescribed medication as a reason to doubt

his veracity. If a claimant complains about disabling pain but fails to seek treatment, or fails to

follow prescribed treatment, an ALJ may use such failure as a basis for finding the complaint

unjustified or exaggerated. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989). Here, the ALJ

noted that plaintiff had not been compliant in taking his medication. AR 23. Although plaintiff

11

described feeling depressed and anxious, rather than take prescribed medication, he has chosen

instead to self-medicate with street drugs (i.e. methamphetamine). *Id*. at 218, 221. Other times,

when plaintiff has taken his prescribed psychiatric medication, the evidence showed plaintiff's

anxiety and depression subsided. *Id*. at 280, 305  The ALJ also noted that although plaintiff's

gout is chronic, it is controlled with medication when exacerbated. *Id.* at 199; *see Tommasetti v.*

*Astrue,* 533 F.3d 1035, 1044 (9 Cir. 2008) (the fact that claimant "responded favorably to

conservative treatment including physical therapy and the use of anti-inflammatory medication

. . . undermines [claimant's] reports regarding the disabling nature of his pain"). Plaintiff's

failure to take his prescribed medication is a sufficient basis for discrediting his testimony.

The ALJ also correctly discounted plaintiff's credibility based on his extensive daily

activities. Plaintiff wrote that he had no limitation in performing house work (laundry, cleaning,

and cooking) or yard work. AR 88. Plaintiff prepared his own meals, which could take up to 20

minutes, and he did his own shopping, which "takes hours." *Id.* at 88-89. In fact, plaintiff

claimed the only assistance he needed to perform these chores was "words of encouragement."

*Id.* at 88. He also indicated that he rode his bike,[6] fished and read books. *Id.* at 90. He

frequented the library. *Id*. And he retained the ability to handle his own money. *Id*. It was not

unreasonable for the ALJ to find that this level of activity, which was transferable to a work

setting, undermined the credibility of plaintiff's subjective complaints. *See Thomas*, 278 F.3d at

953, 959 (holding that the ALJ did not err in finding that the claimant's ability to perform chores

such as cooking, laundry, washing dishes, and shopping undermined the credibility of her

subjective complaints); *Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 600 (9th

Cir. 1999) (holding that the ability to fix meals, do laundry, work in the yard, and occasionally

_____

[6] Plaintiff testified that he no longer rides his bike due to pain. AR 362.  However, he alleged disability beginning on June 1, 2005, *id.* at 58, and continued to ride his bike "as a hobby" in June of 2007. *Id.* at 90. The fact that he was able to ride his bike during his period of alleged disability is relevant to the ALJ's determination. The plaintiff must establish disability on or before the date he applied in order to be entitled to a period of disability and disability insurance pursuant to sections 216(i) and 223 of the Social Security Act.

care for friend's child served as evidence claimant could work); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (per curiam) (holding that the ALJ did not err in concluding that the claimant's ability to cook, do dishes, go to the store, visit relatives, and drive indicated that he could perform light work)

Accordingly, the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for discrediting plaintiff's testimony.

C.    The ALJ Did Not Err in Failing to Credit the VE Testimony

Plaintiff argues that the ALJ erred by not posing a hypothetical question to the VE containing the limitations identified by his treating physician, examining physician, and his testimony. As explained above, the ALJ did not err in evaluating the evidence. The hypothetical posed to the VE was based on the ALJ's assessed RFC findings, which is supported by substantial evidence. Thus, defendant is entitled to summary judgment.

IV.    CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence and is based on the proper legal standards. Therefore, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 27, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE